Good morning, Your Honors. I'm Todd Burns, and my client has indicated to me that he prefers to go by Mr. Setagayan, so that's how I'll be referring to him. My hope is to reserve five minutes for rebuttal. There were two components to the trial defense in this case. One was a mere presence defense, an affirmative defense, and the other was to attack or undermine the credibility of the government's key cooperating witness. The district court committed evidentiary and instructional errors in both of those contexts, which undermined Mr. Setagayan's right to present a defense and also to have a fair trial. I'm going to begin with the mere presence defense and with the evidentiary error. The goal in that context was to distinguish the people that were admittedly involved in drug trafficking from Mr. Setagayan, who was a spectator, perhaps an owing spectator, but nonetheless a spectator. And the video evidence from outside the Scoville residence provided strong proof of that distinction. It showed that the people who were engaged in drug trafficking did two things that were the hallmark of that drug trafficking. They wore latex gloves so they didn't leave fingerprints on the packages, and they carried packages for mailing. So the jury did hear that other people in the videos were wearing gloves and carrying packages and that your client was never seen doing either thing, correct? The one thing that the judge specifically allowed was the paralegal witness, Ms. Gavorgian, to testify that none of the videos can Mr. Setagayan be seen wearing gloves or holding packages. So I struggle to see how what you wanted to have happen is very different than what actually happened, other than that it would have taken more time and been more complicated. Well, it wouldn't have been very complicated. It wouldn't have taken very much time and it would have been powerful. What Ms. Gavorgian would have said is of the four people who were admittedly involved in drug trafficking, she saw them on 59 occasions doing one of those two things, which were the hallmark of their drug trafficking on dozens of occasions. And the jury just simply didn't get to hear that. But why is that so much more persuasive than seeing that some of the time they were wearing gloves and carrying packages, but your client never was? Well, I don't think Ms. Gavorgian even was allowed to say that. The judge didn't even allow her to say that. What he did allow her to say is that Mr. Setagayan did not do either of those two things. But the jury did see some videos in which those other people were carrying packages and wearing gloves. They saw two videos in which Mr. Malcom and Mr. Chavez were seen doing those two things, carrying packages and wearing gloves. So those are those are four. Weren't both sides allowed to put in 20 videos? The judge said the defense could put in as many as as the government did. I think the defense put in, I forget the exact number, six or something like that. But the point is that the testimony would have been very powerful and much shorter in time than Ms. Gavorgian was allowed to do what was proposed to be done, which he could say, look, Mr. Malcom is seen wearing gloves on 15 occasions. He's seen carrying packages on 14 occasions. Ms. McGrath has seen similar numbers for all those people, adding up to 59 times over a 10 day period of time. I think a jury would certainly wonder and that would make a powerful closing argument like, look, these people who are the drug traffickers, you can see that they're engaged in drug trafficking because they're doing these things over and over and over again. And Mr. Setagayan is not. That would be a powerful argument to raise at least reasonable doubt with the jurors and the judges reason for precluding. It's not really clear. You seem to think, well, wasn't the jury told that they never had gloves on? Yes, they were told that Mr. Setagayan didn't wear gloves and that he didn't handle. Was also told that the admitted drug traffickers were wearing gloves. How many times how many times they have to hear that and see that? No, no, they weren't told that she wasn't permitted to testify to that. She was permitted. The defense was permitted to introduce up to as many videos as the government was able and the government was able to introduce videos that effectively on one side showed that there were admitted drug traffickers wearing gloves and that Mr. Setagayan was present but not wearing gloves. Why isn't that enough? How many times do you have to do that? You have to do it all 59 times. No, I don't think you have to. You don't even have to do it one time. Really, you could just have Miss Givorgi and testify tight and to the point wasn't there. Excuse me. She wasn't there. No, but she reviewed all the videos. She's acting as a juror. She's going to be the 13th juror and say what she saw. No, she's going to do the same thing effectively that the government's agent witness did which is talk about identify who can be seen doing what in the videos. He did the exact same thing based on the same materials as Foundation. There's no allegation that in any her testimony she misidentified anyone or in the summary chart she misidentified anyone. She clearly identified the right people and she clearly could have gotten up and said rather than introducing 59 videos gotten up and given a summary of these people are seen many many times doing these things and Mr. Setagayan is not and it's a classic compare and contrast. I mean when we get to probably third grade in elementary school, that's one of the major analytical tools that they test us on is comparing contrast because that shows the truth here. The truth is these other people are engaged in drug trafficking. Mr. Setagayan is not and the judge's reason for excluding that is not really clear. He seemed to think that defense counsel maybe should have tried to get that testimony from the FBI agent but the FBI agent wasn't prepared to testify to that and the defense doesn't have to put on its case through an FBI agent who may be hostile and unwilling and unprepared. Ms. Gavorgian was clearly qualified to give this testimony and the government doesn't even argue to the contrary. It doesn't support the district court's reason for preclusion on appeal. What it says is similar to what the court opened with. Well, didn't Ms. Gavorgian get to say Mr. Setagayan was not wearing gloves or carrying packages? Yes, true, but that leaves out the contrast and the other argument that the government makes is a similar one Judge Friedland said as well. A few videos showed these people doing wearing gloves and carrying packages. Yes, a couple videos showed two of them. It didn't show four. It didn't show that there were dozens of events. I thought that part of the testimony that or the what she the proffered testimony that was excluded was that she was going to opine on the patterns of activity of the admitted. Well, they use the word patterns but when when it was explained it's what I have called hallmarks really that these two things wearing gloves handling packages are the things that showed someone was engaged in drug trafficking and government tried to essentially made the same point when it would show these videos you know why did people ask the agent why do people wear gloves so they don't put fingerprints on the packages but I so I guess my question is I mean if she's whether you call it hallmarks or patterns that seems or could the district court not reasonably have thought that that crosses the line from just describing what she saw to you know making a conclusion about how what she saw is indicative of drug trafficking in a way that is really an expert opinion from someone who's not an expert it was not proposed that she would that she would make any conclusion what was proposed that she would say in this number of videos I saw Mr. Malcolm I guess my point is that to the extent she's testifying about like the patterns of activity from the drug traffickers that kind of is a conclusion isn't it or or so the district court could think it's readily observable from the videos themselves it's the same kind of testimony the agent Siciliano gave it's certainly opinion testimony that's admissible under federal rule of evidence 701 it's rationally based she has a foundation for it she's right about it no one said she isn't right about any of it she's right about she's looking at the video someone's got a glove someone's got a package you can show them 954 videos but of course that isn't very effective that's why the summary testimony in this context makes perfect sense and she's not going to say oh these are patterns that show drug trafficking she's going to show say in this number of videos Malcolm was handling packages in this number he was wearing gloves same thing for McGrath same thing for Chavez same thing for Kirikosian and then an argument closing argument defense counsel says why is it the Mr. Setegian is not wearing gloves or carrying packages because he's not engaged in the drug trafficking the other people are they make that argument at closing no because they didn't have that contrast why didn't they make that argument at closing with the evidence that was in that he wasn't wearing gloves in the videos or carrying packages in the videos well they didn't make that specific argument that I said I don't remember the exact closing of course they made the argument you know sort of along the lines that he was merely present because that was the defense but they were deprived of the key contrast evidence to make that defense the contrast evidence was the videos that showed he didn't have gloves sure and the judge didn't want to admit all 954 videos for obvious reasons or the summary chart which was also admissible you need some you don't need all well you need them all when the numbers are big to show zero as compared to a mountain of evidence that these people are doing this stuff if there's only a couple of times where other people are wearing gloves or carrying packages say okay well sometimes they were wearing gloves sometimes they were you know it's not that compelling but if there's if there's 59 times that's a pretty darn compelling contrast switching gears in the same in the mere presence context the jury instruction the central case from this court on that is negrete gonzalez and the government seizes on language and negrete gonzalez that says if the government's case is based on more than just a defendant's present presence and the jury is properly instructed and all they want to the crime then a mere presence instruction is unnecessary and they say well here you know there was an instructional error on the elements and there was more than mere presence but the same thing holds in negrete gonzalez on the the thing that they wanted the instruction on to do mere presence there was no instructional error and the court goes on in the next paragraph and admits that there was more than mere presence as his activity in the parking lot was described by agents as counter surveillance and he passed a knife into the bedroom when requested to do so by medina these facts were important but the key evidence remained his presence this case same thing the key evidence remained his presence the instruction cooperators testimony well i think cooperators testimony that's of course another issue into this case which if i have time i'll get to it should have been undermined in ways it wasn't allowed to be undermined but no i think this court is held like especially if you're doing harmless error analysis you can't rely on cooperator testimony because it's problematic so no i think the key objective evidence is the is the video evidence is is his presence there so uh the instruction should have been given under negrete was admitted obviously yes and i think the instruction one of the reasons i think the instruction is especially important and it's not captured anywhere else is it talks about it has there are a few important lines but one is particularly important it says the defendant must be a participant or participant and not merely a knowing spectator a knowing spectator and why isn't that captured by the elements of the crimes he was convicted of how could you find the elements without finding more than just presence the drug crime he was convicted of was a conspiracy and i think jurors who aren't carefully instructed in this area because of you know guilt by association sort of thoughts that we all have naturally as humans could assume well if you're there and you're watching what they're doing and they're carrying on this this activity and you're there you're a knowing spectator you're tacitly part of that agreement and that's why i think it's so important to give that instruction that even a knowing spectator even if you know what what's going on you're standing there you're watching you know what they're doing that that's just not enough to say that they're part of the agreement the was knowing and intentionally isn't that what the jury was instructed that what he was doing was knowing and intentional not just present i believe they were given a conspiracy a standard conspiracy instruction i don't recall if the language was specifically knowing intentional obviously they say you have to make an agreement um but again that's my point is jurors might conclude unlawful yes knowingly and intentionally jurors might conclude though that there's a task agreement if you are knowing spectator and that's why i think it's what the jury was instructed hopefully the jury and we assume that jurors will follow the court's instruction well that's true but there are certain contexts in which we give specific instructions because there is a risk that the jurors will convict on improper bases and i think that's a good uh segue to the uh second component of defense which was i mean okay well just to follow up on that i mean the the conspiracy instruction included a person does not become a conspirator merely by associating with one or more persons who are conspirators um so that's that's not quite merely by being present with them but it's pretty close to that isn't it well i think it's it's not i would agree with your honor it's not like being present with them it's also not like being a knowing spectator being there when they're engaged in this activity which i think there's a real risk that a jury in that context could find that sufficient to imply uh they say there's tacitly an agreement to be involved in this and i think if the negrete gonzalez they reversed the court reversed because of the failure to give the instruction i think in the context here and the risk presented here that the instruction was uh at least as warranted as in that case switching to uh the undermining malcolm and i may only get to one part of this argument not to the evidentiary but i'm going to start with the jury instruction because the court's model and jury instruction on this refers to four special circumstances and indicates by its use of plural that if any of those are if multiple are present they should be instructed on and the parties jointly proposed that the court instruct on the benefits special circumstance and the pleaded guilty special circumstances both sides agreed that should be instructed on the judge didn't give the benefits portion and said well in essence that's cooperated by the pleaded guilty it's covered by the pleaded guilty instruction but it's not it's it's not at all in this court and halbert is recognized as a matter of fact jurors hearing about uh cooperators pleading guilty they might think it's more likely that they're telling the truth because they took responsibility for what they did and they've admitted it and if they pleaded guilty they must have knowledge as to what was going on actually the pleaded guilty factor is a negative one if well he told them to view the witnesses with greater caution because they pleaded guilty not because but i'm saying it's hard to say how that instruction makes it more likely they believe them when the judge is saying view them with greater caution well i i'm what what i'm saying is is not that he i agree with that they said viewing with greater caution but there's there's a real distinction between someone getting benefits and someone pleading guilty someone getting benefits is is i mean i've been practicing defense law i've tried about 50 cases in federal court i've argued a bunch of them uh someone getting benefits is way more serious to me i would way rather have that instruction for a jury than i would the pleaded guilty thing i don't even really know the pleaded guilty thing much benefits my clients at all i i'd give it away in a heartbeat for the benefits instruction but you have you have the judge telling the jury to treat their testimony with caution you have a vigorous cross-examination by defense counsel you have arguments at summation that go directly to the to the major benefit that the witness testified to and counsel is trying to pound on before the jury which is that that they are hoping that the judge on the basis of the they gave and on the recommendation from the prosecutor will sentence under the mandatory minimum well this this is my answer to that number one this court's case law says if the witness is important the instruction should be given this witness was clearly important destruction should have been given under this court's case law uh but but i think there's another is there any case law that says the instruction needs to be given if it's not clear that a benefit will be given because i couldn't find one well the thing is if you're going to buy into that you're really allowing the government to kind of hoodwink the whole system and say well we're not sure if we're going to give a benefit it's only if it's only if he tells the truth well who decides if they tell the truth they decide if he tells the truth in washington versus texas the supreme court said that's the worst possible situation if they're awaiting their benefit if they have to please to get their benefit and furthermore defense counsel in light of that asked that the judge modify the instruction to take into account they receive benefits or they will receive benefits to cover that exactly that sort of thing i mean that's the dynamic should have said might though i mean it seems like the issue was might receive benefits i i don't recall the the exact language she used but that's the worst dynamic that's the only thing that could be promised is might because the judge retains the power of at the time of sentence well my yes the government makes a sentencing recommendation my experience and it's it's not a short one and i've talked to many colleagues about this is those cooperation uh recommendations are pretty routinely followed and the defendants know it they know that's what they're playing for there's no doubt about it but there's one other thing i'd like to say about that instruction that i think is very important if it's not given to the jurors what the jurors are left to think is they might think well geez i don't really i don't like this that they're giving this this person uh potential benefits or they've given benefits i don't like it but i guess that's just the way they do business the court does business and if that's allowed then that's allowed and so i shouldn't discount it at all i should consider it just like any other evidence and that is not the law the law is that that stuff is dangerous and the jury should be told it's dangerous view their testimony with caution he didn't say view it with caution because they're given benefits which this court's case law again requires uh and that is to that is just okay that the courts don't look skeptically on it the jurors don't look skeptically on it is a real risk and it's one that should be protected against and there's no there's just no reason not to tell the jurors that we allow this to go on but it is a corrupting influence and no one should kid themselves about that it is a corrupting influence they know what they have to say you saw mr sabbat you saw mr save any time for rebuttal because you're running out yes but you saw mr malcom's testimony change over time because he knew what he had to deliver it's a and the jurors that shouldn't be highlighted for the jurors i'm sure it was highlighted by council no uh i'm sure she argued it in closing it's different than a jury instruction bernard this court's uh case law says that as well let's hear from the government good morning may it please the court my name is alexandra michael and i'm here on behalf of the united states more than most cases this appeal asks the court to step into the district court's shoes and substitute its discretion for that of the trial courts but the trial court is the one that lived this case is the one that saw the testimony and made judgment calls based on evidence and testimony it saw this court should appropriately grant deference to those decisions as well as to the jury's verdict of guilty on all counts now i was going to begin with the first point that defense council brought up which goes to the district court that properly limited the testimony of gorgon and also excluded the summary chart this is reviewed for an abuse of discretion by the district court and the district court did make proper findings and make the correct conclusion the defense wanted to enter into evidence a summary chart created by a paralegal of all 954 videos and as the court has seen these videos were captured by a search warrant and only portions of those videos were seized by the government to be used inconsistent seized by the special agent in this case to be used as evidence in this case so what we're talking about are videos that were not seized pursuant to that search warrant that the defense council requested and then they showed up the day before trial started with the summary chart that was about 31 pages long now in terms of a summary chart under rule 1006 the underlying portion of that summary chart needs to be admissible and that was really the main issue that the government was bringing up that these were simply not relevant if you looked over that 31 pages it talked about at some point no activity it would say someone was power washing the driveway someone was playing with a dog there was pages upon pages of evidence that was simply not relevant at all to what was going to be presented at trial now as council also brought up in terms of that when it came down to the summary chart another part of rule 1006 is that the proponent must be given the underlying documents and have a reasonable amount of time to actually review them now we only got the summary chart about a day before trial had started and i believe that the witness testified it took her about two weeks to review all these videos so additionally the government argued the fact that did not have time to go over all of these videos we did not have time to make sure that they were actually correct summaries of the evidence in there so that was another issue that the government had i'm not sure i totally understand the difference between the search warrant ones and the ones that weren't the search warrant ones i think the other side says that the delay was your fault can you explain what what that piece of this is about yes your honor so in terms there was a search warrant that was obtained for arlo videos because that was the um subscription or the the company that was giving the the video ability to be done so there was a search warrant for all of those videos now which is standard practice as a part of a search warrant in the central district of california um is there is a scope to that search warrant so when it's reviewed by law enforcement they ask for all of it and then they're meant to scope and look for evidence that's specifically relevant to their investigation and that's actually usually listed out as to what is it permitted to be seized because you're not just going to take everything not but you had the other videos so is the idea you took the whole camera but you were only supposed to look at some of the videos i don't really understand usually we'll take everything because of the type of evidence it is so i can compare it maybe to doing a search warrant in a house in a house you can go in they can the agents know what they're looking for so they can specifically go in and take what they need and then they leave everything else unfortunately when you request evidence from some of these companies they will not do that segregation for you so it has to all be passed over to the government or through the to the agent and then they have to actually do that these videos that are on the chart start with the government and was then produced under rule 16 or jibrio to the defense or these videos that the defense procured and made available to the government so if i can just explain for a moment so the government seizes the videos that they believe are part of the and they're set aside because those are not considered consistent with what is permitted to be seized under the search warrant because of the specific dates or something just because it's not considered relevant to the investigation somebody power washing the driveway again this can happen with a cell phone as well you might get the whole cell phone but you only see some of it and then you leave the rest and usually the agent will keep that as the original so if there's ever an issue they can go back to it but a lot of times the government actually doesn't get that because we don't want nor do we believe we are entitled to that evidence so we had the 79 videos that were turned over to defense we litigated these extra videos defense did a motion to compel we opposed it saying that we weren't in a position and they weren't in our possession ultimately we determined that malcolm who was the subscriber to this company could give consent to to get them so then the whole set was provided to defense counsel but that happened close to trial i believe it was um mid-november so about a month before trial that was resolved and so they had that time so they had the whole videos meanwhile the government's not looking at those videos because we're not planning to use those because they've already been determined to be not relevant to the investigation so we're focusing on prepping for trial defense has all the videos and then clearly they're having their witness go over them make a summary chart but they show up with that summary chart the day before trial so i'm answering your question in terms of why there's kind of the separate portion of them um that was explanation for that and we had not had time to go back and review them and i believe the court brought up the fact that the special agent said he did review them all so any question about other videos would have been more appropriately handled by him also had we had that summary chart earlier we could have asked him to go back and sort of check um what the summary chart was in relation to that witness and then we might have been able to further litigate that issue and the defense argues that we can't really tell what the district court's reasons were do you think we can tell i i do think we can tell your honor i just may have one moment um the district court ruling i believe had an issue with the relevance had an issue with the type of testimony opinion testimony um also had an issue with sort of what was in those and these are at 4 er 712 where the court said picking anyone off the street that just reviews 100 videos and say they can testify as what they purport to say he was struggling with that uh 4 er 715 show videos to show what you would characterize as innocent activity i don't know because i don't have the exhibit so the court didn't even have the exhibit to be able to look at it when this was being argued to the court the court also said at 4 er 716 you can pick 20 or so to counterbalance the government's argument and later he said i'm not having the witness talk about their description of mcgrath entering the gate holding a purse or holding an apple ipad mcgrath on the front lawn who cares about all of that i mean i don't see what the relevance is also at 4 er 873 he said i would have asked the agent so i do think it's very clear from the district court's position and i will also um argue to your honors that this was argued at different points of the litigation of the trial this was a motion limine that was brought sort of late but we argued it before we started and then in the middle of testimony i believe defense council was trying to use the summary chart to um refresh the recollection of the witness and government council was concerned they were going to start to testify to something that had been deemed inadmissible by the court so we went sidebar again and sort of rehashed these arguments so the court had multiple opportunities to consider these arguments and there is quite a bit in the record as to what his concerns were and to how he thought it was inadmissible evidence the chart that also had the sense impressions of the of the paralegal as to what was on the on on the each of the videos yes your honor it there was a relevant activity there was a lack of foundation there were descriptions like malcolm's father and malcolm's parents but there had been no foundation laid as to how she was able to make those identifications they were also subjective and speculative she would describe things as presumably in um brackets what appears to me her activity inside the garage is unknown but the sound of the use of duct tape is heard in the recording that's at 6 er 1109 again possibly malcolm's parents there was just too much speculation in this for it to be deemed an appropriate summary chart to be admitted for the um for that purpose and in terms of the testimony i believe your honors um asked questions to counsel about that i think it's fair her testimony was not excluded it was just limited and and i do believe what the court did in essence was actually beneficial to the defense um the court gave the defense the ability to put in 20 videos yes they allowed to put in 20 videos of john diligent walking past the bank and not robbing it they were permitted to do that they chose to play i believe it was at least five and have the witness testify to them and i think the most important evidence was that this witness got to testify that she watched all of the videos and in none of those videos was the defendant seen wearing gloves or was the defendant seen handling a parcel and that is what defense counsel argued in closing and that really almost was more effective and efficient than her going through and giving some different numbers here and there that was the issue they were going to make so i would argue to your honors that whether this witness would have said mcgrath wore gloves 20 40 60 times that simply doesn't matter what matters for their argument and their defense was that the defendant was not seen wearing gloves or not seen handling parcels and they did capitalize on that in closing argument so i don't believe the district court's decision harmed them in any way because they were allowed to put forth their defense as as they wanted to and as they needed to now if i think about this um instruction about the viewing the witnesses with caution yes so i have to admit that i don't have a lot of experience with criminal trials in the trial court so i'm just wondering how this usually works like it seems like reading the text of the model instruction it anticipates that someone would know that the benefit is going to be given and that that wasn't true here because it hadn't been determined yet but is it usually the case that it hasn't been determined yet like i'm trying to figure out how this model instruction usually works can you help me with that yes runner i i really think it's on a case-by-case basis um i would say that yes when you're dealing with a cooperator who's entered into a cooperator uh plea agreement and a cooperation agreement that it is fair to say that they will say they have not received any benefit yet or any promises but that they do hope that there may be a lenient sentence um so should the model instruction be different i mean the model instruction seems to say sorry what is it i have it it's it's more definite than that so i thought the court was correct to be struggling with well it's not definite here but why is it worded in this definite way it's kind of odd i'm not sure you're on i know it says received benefits compensation favored treatment from the government connection with this received like it's much more definite yes your honor but you think it usually gets modified to be might receive i think we were proposing that but i don't think we felt that that was an accurate instruction it's not really an instruction at all it's sort of you're saying maybe this will happen um i think the struggle that you can see the court and the parties were having was when we started to come up with what was the benefit and the benefit that we were describing were the benefits that malcolm received through his plea agreement it was the dropping of the 1028 big a it was the fact that if he received any sort of um revocation sentence that it would run consecutively and it was also the and i think the instruction though is intended to be about benefits for cooperating by testifying in the case at hand in the trial at hand and that hadn't happened yet it might happen in the future it hadn't happened yet but i guess my original question was trying to get at am i right that this instruction is usually about cooperator testimony in the test in the trial at hand and if so is it almost always the case that we don't know yet about the benefit and i'm not sure the answer that question your honor um i know that i have not seen it like that before that doesn't mean it doesn't happen it also doesn't mean that it couldn't be fashioned in a more precise way perhaps to say benefits in relation to a plea agreement or in relation to a cooperation agreement or some other language i think there there might be a way it could be fashioned to be more specific to what the testimony was um i do he didn't get any of that here i mean he didn't get might receive benefits or an instruction about you know might receive benefits he didn't get an instruction about the plea agreement uh all he got was an instruction about the fact that they had pleaded guilty right that is true that is a section he got i would argue to your honor that because the only information the jury received in relation to pleading guilty was in relation to a plea agreement and it was very extensive i believe that the jury would understand it or take it that because that was the majority of his testimony i'm not sure that i don't think a jury would necessarily see the difference between just pleading guilty versus the plea agreement i feel as though it was all presented in the same fashion and that's what it was mainly that's what the agreement was the benefit yes well the benefits in the plea agreement yes that was that was the benefit and and there was a caution that was attached to that benefit the second portion where it did say to treat his testimony with caution there were also additional um not specifically cautionary instructions given but additional instructions given that because of his prior convictions his uh credibility was to be looked upon more skeptically i'm not using exact verbiage for that do you think it would have been i mean is there some is there a good reason not to give an instruction that mentioned benefits um wouldn't it have been better to do that here i think when we were going over the reasoning we were really struggling with what qualified as a benefit and i think ultimately at that time we determined what had been testified to didn't fit into how the model um instruction had it but you did propose a different version right you you were willing to have him get some other version of it am i right when when the parties submitted um their proposed jury instructions in the beginning usually we submit to the court here are the instructions we believe are going to apply in this case um and i would say it's fair to say we're usually over inclusive and we did include both the benefit section and the plea agreement section so and that's why when we went to our final jury instruction conference that's why we were talking about it because that's when we were trying to figure out does this section really apply is that what the evidence and testimony said does it make sense is it otherwise covered which i think the court talked about a that he believed that the instruction that he agreed upon he believed it gave the jury what they needed in terms of um malcolm was getting a plea agreement and he was cooperating and that's why you should take his testimony with greater caution in the central district that's that's something that's jointly submitted by the government and the defense or separately it is dependent on the judge your honor some judges will request both parties submit their own some will request that they submit them together it's it's judge specific and in this case and in this case um my cell or the councils we conferred and we came up with a list that we agreed would potentially apply and then separately there was contested jury instructions which i believe was also part of the record where the government might say this one will apply and then the defense would say no and they would have to give their reason so it's just meant to streamline the whole process that you do it by reference to a pattern instruction or do you actually restate the proposed instruction itself we use i'd say the pattern instruction if we're agreeing upon it but there may be cases where the parties will agree upon something a little different and then when we're doing each one of our submissions um it can be either or sometimes it's a pattern sometimes it's something newer i think this case because we had some newer issues with bitcoin um there was some different verbiage that was proposed that wasn't even necessarily covered in a pattern but we found other cases and other examples to propose to the court and can you i'm looking at the instruction and just trying to figure out what the jury would make of it i mean so maybe you can help me with that so it's four sentences uh the first is just says that malcolm and sabah he pleaded guilty then the guilty plea is not evidence against the defendant i'm fine uh then for this reason in evaluating the testimony you should consider the extent to which testimony may have been influenced by this factor like i don't know why testimony would be influenced by the fact that somebody just by the fact that someone had pleaded guilty without reference to anything else and then in addition you should examine the testimony with greater caution and i don't know why you would do that because the the instruction hasn't really suggested any reason that that makes sense so what's what's the jury supposed to do with that well i believe this is where i would go back to the fact that again the the jury has heard from opening to direct to cross and closing all the fact that malcolm has pleaded guilty and he's cooperating that's sort of all the information that was one of the biggest points that defense counsel made so i think that when you combine the evidence on the record and the testimony that was given it's it's clear that when we're saying pleaded guilty he pleaded guilty he entered into a plea agreement and he's also cooperating i understand that like a harmless this argument yes your honor it is and there's also as i had mentioned there's the other two jury instructions that were given as well um that you have heard evidence that rain malcolm has suffered felony convictions you may consider this evidence in deciding whether or not to believe the witness and how much weight to give that testimony and then along with the witness credibility where there are those portions that talk about you can look at the interest in the outcome of this case if this witness has any interest in the outcome of this case so so i guess going back to my earlier question can you give me any hypothetical of how this model instruction would be used correctly so it would really say the benefit was already received and that's what the jury should take as caution is there is there a situation where that happens again your honor it's hard it's hard for me to say i it's a really tough question um i think again you could see the parties and the tense but i guess i'm asking because we could write an opinion that says this model instruction has caused a lot of confusion and should be fixed and i it seems like maybe we should do that but but you could have a situation where someone has already been sentenced uh and now it's coming back and got a benefit at the time of sentence and testifying pursuant with another promise on the rule 35 in a separate case and would have already received a benefit based on the prior cooperation with the government i think i think the term benefit is is really it's really tough um looking back now as especially with the facts of this case perhaps something that referred to a plea agreement perhaps something that referred to a cooperation agreement it really should be the cooperation agreement though right because it's about being skeptical of the testimony you're hearing right now so even even a benefit in a different case wouldn't be as powerful as it seems like this is supposed to be getting at that but it's like worded badly right and and there are for this case for this example obviously there were some benefits with the plea agreement and then again the cooperation agreement is the potential anticipation but still very clear with the testimony he hasn't promised anything and we did go into testimony that not only was he cooperating in this case but he was cooperating another case so again the jury got to hear all of it but those are the only other two words or wording that i can think of that could have perhaps clarified it more so and would be consistent with what came forth in this case thank you thank you let's put a minute on the clock for rebuttal the model instruction stinks and it's not it's not unintended it's because it allows the prosecutors to muddy the water and they get up and say under the agreement his only obligation is to tell the truth and so there's no there's no benefit here but the reality is they prep him he knows what he's got to say that here what's that did the prosecution get up and say that here that they prepped him no that he's not getting a benefit i believe they did they always do they just say his only obligation to anything in the record that says that he wasn't getting any he wasn't even possibly getting any benefit for this testimony i can't point to the record but they always say his only obligation on the plea agreement is to tell the truth and the reality is he knows he's got to sing the right song and if he does they'll make the right sentencing recommendation and very likely the judge will follow everyone knows it's very corrupt i can't get judges most of the time to give the model instruction which stinks i try to modify it and make it real clear what's going on they certainly aren't going to they don't give that i mean this is a real problem imagine if i'm paid witness they write an opinion that says this model instruction should be clarified to instead of say received should say might receive i think it should be much stronger it's a real threat to the truth-seeking process what's going on here and and they know what they're doing with it they're muddying the water so the jurors can't understand regarding the timing thing of the sorry you're out of time but can you tell me what you think the model instruction could say i think it could say something to the effect of and what i've proposed in the past is the government has agreed to make a sentencing recommendation for the defendant based on his testimony if they approve of his testimony after the after the fact and they will submit that sentencing recommendation to the judge so the defendant obviously has an to testify in a way that pleases the prosecution i would probably make a couple drafts that make it a little more clear if i may just say one other thing regarding the the video evidence i covered extensively in the opening brief over five pages 26 to 30 the timing and why the government made that whole problem of the timing itself the government and uh it's answering brief 51 note 10 basically i think we we read your arguments in your brief so thank you very much you're out of time thank you both sides for the helpful arguments this case is submitted and we're adjourned for the day you
judges: FRIEDLAND, MILLER, Vitaliano